The STATE of Ohio, Appellee,

v.

ALLEN, Appellant. ▉

[Cite as *State v. Allen* (2000), 140 Ohio App.3d 322.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000011.

Decided Nov. 24, 2000.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Jerome P. Stineman,* for appellant.

PAINTER, Judge.

The juvenile court found appellant Durrie Allen guilty of child endangerment under R.C. 2919.22(A) and sentenced him to ninety days in the Hamilton County Justice Center. Allen appeals, claiming in his sole assignment of error that his conviction was against the weight of the evidence, but actually arguing that it was not supported by sufficient evidence. While we recognize that sufficiency and weight are separate issues, we address the argument incorporated in Allen's assignment and view his appeal as one challenging the sufficiency of the evidence.

For Allen to be convicted of child endangerment, he must have been the parent or have had custody or control of a child under the age of eighteen, and he must have created "a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

 Further, "[t]he existence of the culpable mental state of recklessness is an essential element" of a violation of R.C. 2919.22(A).[1] R.C. 2901.22(C) states that "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." Thus, in this case, the state had the burden to prove beyond a reasonable doubt that Allen (1) was the parent of a child under eighteen years of age, (2) violated a duty toward that child, (3) created a substantial risk to the safety of that child, and (4) acted with recklessness.[2]

---

1. See *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus; *State v. Martin* (1999), 134 Ohio App.3d 41, 43, 730 N.E.2d 386, 387.

2. See *State v. Caton* (2000), 137 Ohio App.3d 742, 739 N.E.2d 1176.

The state presented evidence that Allen was the father of David, and that he had temporary custody of David. David had lived with Allen and Allen's parents since he was an infant. At the time of the alleged child endangerment, Allen's parents were deceased, and David and Allen lived alone. The parties stipulated that David was seven years old.

According to David's testimony, Allen left David at home watching television. Allen told David that he needed to see a woman. About twenty minutes after Allen left, a police officer came to the house, found David, and took him to a neighbor's house.

Lieutenant Bruce Plummer, a Silverton police officer, testified that he saw Allen walking down the street on the 6500 block of Elwynne Drive. Allen lived at 6306 Elwynne Drive. Officer Plummer knew that Allen was wanted on outstanding charges. When Allen saw the officer, he began to run. The officer caught Allen just before he got to his house. Plummer told Allen that if David was at home, he was going to charge him with child endangering. Allen told Plummer that David was at home, and Plummer directed another officer to retrieve the child.

Allen's cousin testified on behalf of the state. She testified that Allen had called her to inform her that he had been arrested and that she might be having contact with David later. According to her, Allen's main concern was what was going to happen to David. The cousin described David as very bright, well mannered, and personable. The state also presented evidence that David was not in school on the date of the incident and that he had had an ear infection around that time.

Allen's neighbor, who lived across the street, described David as an average seven-year-old. She had watched David in the past when Allen had asked her to meet him at his school bus when Allen could not do so or when he was delayed. She also testified that she was at home all day on the date Allen was arrested.

Allen testified that while David was doing homework, he began to fix dinner. Finding that he was out of butter, he called the neighbor who lived across the street. He assumed that she was not at home because she did not answer the telephone. Allen left the house to borrow some butter from another neighbor, who also had some other food for him. He testified that he had been gone from his house for only two minutes when Officer Plummer stopped him. According to Allen, he told the officer that he needed to take David to the neighbor's house and contact David's mother. Allen testified that David was very mature for his age. He also testified that he did not leave the stove or an iron on when he left the house, and that he would not leave David for long periods.

After hearing the evidence, the trial court found Allen guilty of child endangering. The trial court stated, in part, "You cannot leave a seven-year-old alone. Nothing happened here thank goodness, and maybe nothing would happen a hundred times."

We hold as a matter of law that the state failed to prove beyond a reasonable doubt that Allen had acted recklessly or that he had created a substantial risk to the safety of David. To paraphrase our decision in *State v. Martin,* while Allen may have acted imprudently and possibly negligently in leaving a seven-year-old child alone while he left to borrow butter, he did not perversely disregard a known risk or act with heedless indifference to the consequences. At the most, Allen left David unsupervised for twenty minutes. He testified that he was gone only two minutes when apprehended—the remainder of the time was the result of Allen's arrest by Officer Plummer. Surely, leaving the boy alone for two minutes was not criminal, and the arrest was an unexpected intervening event. The same situation would have occurred if Allen had left to borrow butter and been run over by a bus.

. The culpable mental state for endangering children is recklessness. As this court has previously stated, "[W]e, as a society, cannot punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." [3] The state failed to prove that Allen's conduct constituted recklessness.

The state also failed to prove that Allen's conduct in leaving David unsupervised at home for a short period in the late afternoon while David did homework or watched television gave rise to a substantial safety risk. The state had to prove that a strong possibility existed that David would have been injured. While the state speculated about things that might have occurred, such speculation failed to demonstrate beyond a reasonable doubt that there was a strong possibility that David would have been injured. Even the trial court acknowledged that it was possible for a parent to leave a seven-year-old child unsupervised one hundred times without an injury. While Allen "may have created some speculative risk to [his] child, we cannot hold that [he] created a strong possibility that the child would have been injured." [4]

Applying the applicable standard of review for a sufficiency-of-the-evidence challenge, we conclude that even when the state's evidence is reviewed in a light most favorable to the prosecution, that evidence "could not convince a rational trier of fact beyond a reasonable doubt" that Allen recklessly created a substan-

---

**3.** See *State v. Martin* at 43, 730 N.E.2d at 387.

**4.** See *id.*

tial risk to David's health or safety.[5] If we would hold the evidence presented by the state in this case sufficient as a matter of law to demonstrate child endangerment, we would be creating a rule of law that would make criminal *per se* a parent who mowed the lawn or performed a myriad of other short-term tasks outdoors during the afternoon while leaving an average seven-year-old child unsupervised. This we refuse to do.

Accordingly, we reverse the judgment of the trial court and discharge Allen from further prosecution.

*Judgment reversed*
*and appellant discharged.*

HILDEBRANDT, P.J., and GORMAN, J., concur.

---

**5.** See *State v. Martin* at 43, 730 N.E.2d at 388.