The STATE of Ohio, Appellee,

v.

McLEOD, Appellant.

[Cite as *State v. McLeod,* 165 Ohio App.3d 434, 2006-Ohio-579.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21152.

Decided Feb. 10, 2006.

Joe Cloud, Vandalia Municipal Court Prosecutor's Office, for appellee.

Charles L. Grove, Assistant Public Defender, for appellant.

---

FAIN, Judge.

{¶ 1} Defendant-appellant, Sean A. McLeod, appeals from his conviction for endangering children. McLeod contends that the evidence in the record is insufficient to support his conviction and that his conviction is against the manifest weight of the evidence. We agree with McLeod that the evidence in the record does not support a conviction for endangering children. Consequently, the judgment of the trial court is reversed, and McLeod is ordered discharged.

I

{¶ 2} One April afternoon in 2005, at approximately 4:00 p.m., McLeod's friend Lisa Anderson and Anderson's friend Candy Cooper wanted to go jewelry shopping at a local store. Anderson approached McLeod and asked if he would be willing to watch Anderson's five-year-old daughter, Mackenzie. McLeod had already agreed to watch Cooper's nine-year-old son, Cameron, and her two-year-old twins while the women were at the store. Anderson told McLeod that Mackenzie and Cameron were playing in the playground adjacent to the apartment complex where they lived, which could be viewed from McLeod's apartment window. McLeod agreed to watch Mackenzie, stating that he would be outside to keep an eye on Mackenzie and Cameron as they played.

{¶ 3} Deputy Darren Harvey of the Montgomery County Sheriff's Office was dispatched to the apartment complex on a report that a child had been left unattended. When Deputy Harvey arrived at the apartment complex, the complainant took him to the playground where Mackenzie was playing. Several other children of various ages were on the playground at the same time. Deputy Harvey testified that he had been talking to Mackenzie for approximately ten minutes when McLeod came over with the twins and indicated that he was watching Mackenzie. McLeod told Deputy Harvey that he had checked on Mackenzie within the half hour. McLeod had been walking along a sidewalk between the apartment complex and the playground with the twins, coming from the general direction of the apartment complex rental office. McLeod was the only adult in the proximity of the playground.

{¶ 4} Deputy Harvey called Deputy Jonathan M. Miller of the Montgomery County Sheriff's Department to the scene. McLeod told Deputy Miller that Anderson had given Mackenzie permission to go to the playground. Shortly

thereafter, someone from Children Services arrived. Approximately 20 minutes after Deputy Miller arrived, Anderson and Cooper returned.

{¶ 5} Deputy Harvey testified that the playground was between 125 and 150 yards from the apartment complex. Deputy Harvey further indicated that the playground could be seen from McLeod's apartment window. Deputy Harvey also testified that the view from the sidewalk where McLeod had the twins was "partially obstructed" by brush. According to Deputy Harvey, the playground was a "problem area," with repeated incidents of juvenile assaults. No other evidence relating to the safety of the playground was presented.

{¶ 6} McLeod was charged with endangering children, in violation of R.C. 2919.22. Following a bench trial, he was convicted and was sentenced accordingly. From his conviction and sentence, McLeod appeals.

## II

{¶ 7} McLeod's first assignment of error is as follows:

{¶ 8} "The trial court erred in convicting appellant as the evidence elicited at trial was insufficient, as a matter of law, to sustain a conviction of the charge of child endangerment."

{¶ 9} The relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The legal sufficiency of the evidence is a question of law, not a question of fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. An appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 10} The Ohio Endangering Children Statute provides that no person who is the guardian of a child under 18 years of age "shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 11} The culpable mental state for endangering children is recklessness. *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 404 N.E.2d 144. A person acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

However, parents or other child caregivers are not criminally liable for every error in judgment, under a strict-liability theory. *State v. Martin* (1999), 134 Ohio App.3d 41, 43, 730 N.E.2d '386, citing *State v. Bennett* (July 13, 1995), Cuyahoga App. No. 68039, 1995 WL 415193.

■ {¶ 12} Endangering children may be committed by an omission resulting in a substantial risk of injury to a child. *State v. Elliott* (1995), 104 Ohio App.3d 812, 817, 663 N.E.2d 412. A substantial risk was created when a defendant lost sight of her child for five to ten minutes when defendant's house was near two busy streets and a pond. *State v. Schaffer* (1998), 127 Ohio App.3d 501, 503, 713 N.E.2d 450. However, a mother's decision to leave her nine-year-old son in a locked car while she returned a gift at a shopping mall, while possibly imprudent or even negligent, was not a reckless and perverse disregard of a substantial risk, because, while the mother could have speculated that the car might shift out of gear, this outcome was not a strong possibility. *State v. Martin*, 134 Ohio App.3d at 43–44, 730 N.E.2d 386. Likewise, when a mother left her toddler unattended in a bathtub for between 30 seconds and four minutes, while she dealt with another of her children, she did not recklessly create a substantial risk to the toddler. *State v. Massey* (1998), 128 Ohio App.3d 438, 443–444, 715 N.E.2d 235. The First District stated, "[W]e refuse to hold that leaving a child in a tub for between thirty seconds and four minutes to care for another child, while remaining in the same apartment, with nothing more, can be criminal." Id.

{¶ 13} The state did not prove that McLeod acted recklessly to create a substantial risk to Mackenzie's health or safety. The state highlighted Deputy Harvey's testimony that the playground is a "problem area" that has a history of some juvenile assault activity. While this fact should give any child's caregiver pause, this alone does not constitute a substantial risk, defined by the statute as "a strong possibility, as contrasted with a remote or significant possibility." The area was not so dangerous as to cause abnormal insecurity for Mackenzie's safety. It was only 4:00 p.m., it was a clear day, and McLeod was between 125 and 150 yards from Mackenzie. Further, the record lacks any indication that McLeod should have known that the playground was a problem area; the fact that Anderson and Cooper, as well as the parents of the numerous other children on the playground that day, apparently had no misgivings about allowing their children to play there at that time of the afternoon suggests the contrary. Moreover, the record lacks any indication that anything was occurring on the playground that should have caused McLeod to become concerned for Mackenzie's safety.

{¶ 14} The state also makes much of the fact that Deputy Harvey testified that McLeod's view of the playground was partially obstructed by brush. We do not share the state's view that an actor recklessly creates a substantial risk to a five-

year-old merely by allowing the child out of his or her direct line of sight for a brief period. McLeod indicated to Deputy Harvey that he had checked on Mackenzie sometime within the half hour. It is unclear from Deputy Harvey's testimony whether the child was out of McLeod's view for 30 minutes. It should also be noted that McLeod was the only adult anywhere near the playground where several other children of varying ages were playing alongside Mackenzie and Cameron. It seems somewhat odd for the state to be so concerned with a report made about one child being inadequately supervised when others nearby played with no identifiable supervision whatsoever.

{¶ 15} The state further argues that McLeod could not adequately supervise Mackenzie "because of the divided attention occurring while he was personally attending to two toddlers." While the state makes an important point that the caregiver-to-child ratio should ideally remain low, particularly when those children are quite young, this is an ideal that cannot always be realized. Taken in the extreme, the state's argument would put any parent, sitter, or other caregiver for more than one child at a given time at risk of being charged with endangering children. As in *Massey*, this court is not inclined to hold that someone acts recklessly by turning attention from one child for a moment to tend to another. As the First District appropriately pointed out, "If such a result were possible, undoubtedly the majority of parents in this county would be guilty of child endangering—at least for acts of similar culpability." *State v. Massey*, 128 Ohio App.3d at 444, 715 N.E.2d 235.

{¶ 16} The failure to realize an ideal level of supervisory attention of a child does not equate to acting with heedless indifference to the consequences, thereby perversely disregarding a known strong possibility, as contrasted with a remote or significant possibility, of harm to the health or safety of the child. In this case, McLeod told Deputy Harvey that he had checked on Mackenzie within the half hour during which Anderson and Cooper were shopping. His attention to the twin toddlers did not prevent him from coming outside to monitor Mackenzie during that interval, nor did it prevent him from intervening when he saw Deputy Harvey speaking to Mackenzie. While his supervision may not have been ideal, it did not meet the test for criminal liability under the endangering children statute.

{¶ 17} We conclude that the evidence presented at trial, even when viewed in a light most favorable to the state, could not convince a rational trier of fact beyond a reasonable doubt that McLeod was guilty of endangering children. McLeod's first assignment of error is sustained.

## III

{¶ 18} McLeod's second assignment of error is as follows:

{¶ 19} "The conviction of the defendant was against the manifest weight of the evidence."

{¶ 20} In view of our disposition of McLeod's first assignment of error, his second assignment of error is overruled as moot.

## IV

{¶ 21} McLeod's first assignment of error having been sustained, and his second assignment of error having thereby been rendered moot, the judgment of the trial court is reversed, and McLeod is ordered discharged.

Judgment reversed.

GRADY, P.J., and BROGAN, J., concur.