[Cite as *State v. Bush*, 2020-Ohio-772.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180625 |
| | | TRIAL NO. C-18CRB-16759 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| AMANDA BUSH, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  March 4, 2020


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}    Sometimes, even the best-behaved children prove incapable of following simple directions from their parents.  A mother instructed her four-year-old daughter to play in their front yard with her elder brother.  Wandering outside and seeing the brother nowhere, the girl left the premises to explore across the street.  Police officers intercepted her moments later and returned her home, with the entire incident lasting about five minutes.  Although the mother was convicted for child endangerment, on the record before us, we find that the state failed to present sufficient evidence of the mother's recklessness.  We accordingly reverse her conviction.

I.

{¶2}    In June 2018, during a routine patrol, Detective Chris Jones (accompanied by a training officer) observed a four-year-old girl darting across a two-lane road in the Mt. Healthy area and weaving in and out of parked cars as she went.  Concerned about the child, the two officers stopped their patrol vehicle and approached her, noticing the child was shoeless and unsupervised.  Though the child could not provide her address, she was able to lead the officers to her house, about 100 yards away from where the officers found her.  Upon arriving at the child's home five minutes later, the officers knocked on defendant-appellant Amanda Bush's door, informing Ms. Bush they discovered her child alone and running across the street.

{¶3}    Surprised, Ms. Bush explained that her ten-year-old son was supposed to be watching the child while they played in the front yard.  The officer, however, relayed that they observed no child either in the front yard or in the vicinity where they first discovered the errant child.  After speaking with Ms. Bush for a couple of minutes, Detective Jones requested that Ms. Bush accompany him to his patrol car, inquiring further about her

unsupervised daughter. During this conversation, Ms. Bush repeatedly emphasized that her daughter had not previously run off on her own like this and that she knew the boundaries where she was allowed to play. Further, Ms. Bush maintained that her daughter had just come inside for a banana before she sent her back out to play with her brother (a child's bicycle rested on Ms. Bush's front lawn at the time). Nevertheless, Detective Jones issued a citation to Ms. Bush for child endangerment.

{¶4} At trial, Detective Jones testified to the events above, noting that he discovered the child unsupervised, observed her darting across the street and weaving between parked cars on the road, and never once noticed an elder child in the vicinity during the entire 20-minute interaction. Testifying in her own defense, Ms. Bush reiterated that, on the day in question, she instructed her daughter to go play in the front yard with her brother, who she had just seen outside. In describing the event, Ms. Bush noted that her daughter was not outside for even five minutes before the officers came knocking on her door. Ms. Bush also discussed the boundaries she sets for her children, maintaining that her daughter may not cross the street alone or venture anywhere by herself, and that her sons know they may not roam from the house with their sister in tow. In addition to these witnesses, both the state and Ms. Bush admitted into evidence the body cam footage of the events described above.

{¶5} At the end of trial, the court explained that it would watch the entire video and render a decision at a later date. A week later, the court found Ms. Bush guilty. During sentencing, the court made several references to a specific portion of the video where a young, unidentified man walks up to the officers while they are speaking to the four-year-old. Detective Jones specifically asks the man whether he "knows who she [the child] is," to which the man vaguely replies, "it's happened like twice." However, this young man never

testified at trial, and in fact, defense counsel objected at trial to Detective Jones testifying about this conversation (presumably on hearsay grounds). Ultimately, the court sentenced Ms. Bush to 180 days in jail (all 180 days suspended), a $100 fine and court costs, and 18 months of probation. From this conviction, Ms. Bush raises a single assignment of error, challenging both the weight and sufficiency of her child endangerment conviction.

II.

{¶6} We begin with Ms. Bush's sufficiency argument since it is dispositive of this appeal. In evaluating the sufficiency of the evidence, the court must ask, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found all the necessary elements of the crime beyond a reasonable doubt. *See State v. Conyers*, 1st Dist. Hamilton No. C-150439, 2016-Ohio-2952, ¶ 9, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Ms. Bush contends the state failed to prove beyond a reasonable doubt that she possessed the requisite mens rea, recklessness, and that she created a substantial risk of harm to her child—both essential elements of a child endangerment conviction under R.C. 2919.22(A). Because Ms. Bush's mens rea challenge is determinative, we accordingly turn our attention first to whether Ms. Bush acted with reckless intent.

{¶7} R.C. 2919.22(A) provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Although the language of the statute fails to set forth the specific culpable mental state, the necessary mens rea for the offense is recklessness. *See State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, 957 N.E.2d 44, ¶ 30 (1st Dist.), citing *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The Ohio Supreme Court has held that recklessness is the required degree of

culpability for a violation of R.C. 2919.22(A), although no degree of culpability is specified in the statute."). Pursuant to R.C. 2901.22(C), a person acts "recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶8} Perhaps not surprisingly, child endangerment cases are typically fact-specific. *See Beachwood v. Hill*, 8th Dist. Cuyahoga No. 93577, 2010-Ohio-3313, ¶ 21 ("[I]t seems that the outcome of child endangerment cases are highly fact-specific."); *State v. Hughes*, 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, ¶ 34 ("[W]e note that the outcome of this case is intensely fact-specific[.]"). When evaluating recklessness, courts generally review facts such as the period of time the parent or guardian left the child unsupervised, the age of the child, whether the parent or guardian had any notice of the substantial risk (such as awareness of the child's propensity to engage in risky behavior), and any precautions the parent took to negate the risk. *See State v. Greenlee*, 2d Dist. Montgomery No. 24660, 2012-Ohio-1432, ¶ 15 (affirming the trial court's finding that the parent acted recklessly when the father did not realize his four-year-old son was missing for over an hour); *State v. McLeod*, 165 Ohio App.3d 434, 2006-Ohio-579, 846 N.E.2d 915, ¶ 14 (2d Dist.) (reversing the trial court's finding that the caregiver acted recklessly when he left a five-year-old on the playground alone for up to ten minutes); *State v. Miller*, 3d Dist. Logan Nos. 8-07-07 and 8-07-08, 2007-Ohio-6711, ¶ 19 (finding the mother acted recklessly when "she was aware that [her three-year-old daughter] was leaving the home," since the officer had discovered the child unsupervised just four days prior); *Hughes* at ¶ 29 (reversing the trial court's finding that the father acted recklessly when leaving his five-year-old child in a running car for 27 minutes because the father left the child with a cell phone and kept the air conditioning on

because of the weather, "demonstrate[ing] sufficient concern to negate the possibility of a finding that [father] exercised 'heedless indifference' and 'perversely disregard[ed] a known risk[.]' ").

{¶9}　Turning to the evidence offered below, the state steers us to two pieces of evidence illustrating Ms. Bush's recklessness. First, the state emphasizes Detective Jones's testimony at trial, specifically his statements that, when discovered, the four-year-old was alone, and at no point during the 20-minute interaction did he view an older sibling in the vicinity. As to the second piece of evidence, the state points to a portion of the body cam footage where a young man makes a comment to the officers ("it's happened like twice"), wielding that comment to establish that Ms. Bush has lost track of her daughter before.

{¶10}　However, viewing the evidence in the light most favorable to the state, we find this evidence insufficient to prove beyond a reasonable doubt that Ms. Bush acted recklessly. Turning to the caselaw, we find the Second District's decision in *McLeod* instructive. In *McLeod*, the Second District held the state failed to produce sufficient evidence that the caregiver acted recklessly when he left a five-year-old child on the playground alone while he walked around the apartment complex. *McLeod* at ¶ 16. In reversing the defendant's conviction, the court noted that the defendant left the child alone only for a "brief period," the deputy testifying only ten minutes elapsed between the time he came across the child unattended and when the defendant returned to the playground. *Id.* at ¶ 14 ("We do not share the state's view that an actor recklessly creates a substantial risk to a five-year-old merely by allowing the child out of his or her direct line of sight for a brief period."); *but see State v. Schaffer*, 127 Ohio App.3d 501, 503, 713 N.E.2d 450 (11th Dist.1998) (finding the defendant acted recklessly because the defendant "lost sight of her two-year-old child for at least five minutes, and possibly as long as ten minutes"). Further,

during that ten minutes, the court emphasized the defendant was no more than 125 and 150 yards away, it was light out, and the defendant testified he checked up on the child within the last half hour. *McLeod* at ¶ 13. And thus, while the defendant's supervision fell short of ideal, the court held that "failure to realize an ideal level of supervisory attention of a child does not equate to acting with heedless indifference to the consequences," and therefore the state failed to prove the defendant acted recklessly. *Id.* at ¶ 16.

{¶11} Similar to *McLeod*, Ms. Bush lost track of her four-year-old daughter only for a brief period. The body cam video establishes that no more than five minutes elapsed, which comports with Ms. Bush's testimony (and the child was gripping a banana that her mother had just given her). Nor did the child stray far—only about 100 yards based on Detective Jones's estimate. Moreover, this was not a situation where Ms. Bush did not know her child left the house in the first place. *See Schaffer* at 503 (affirming the trial court's finding that appellant acted recklessly when her two-year-old son strolled outside from the house without her knowing and the house was near a pond). Instead, more akin to *McLeod*, Ms. Bush sent her four-year-old child outside to play in the front yard, during the daytime, and maintained close proximity to that area where her daughter was supposed to be with her brother.

{¶12} Further, Ms. Bush took precautions to negate the risk of her daughter drifting from the house and running into the street, indicating that she was not acting with "heedless indifference." In *Hughes*, the Third District held the state lacked sufficient evidence to show the defendant acted recklessly when he left his five-year-old in a running car alone for 27 minutes while he went into Wal-Mart. *Hughes*, 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, at ¶ 33. In doing so, although more akin to a review of manifest weight, the court emphasized that the defendant's actions, such as leaving the car running so his daughter

had air conditioning and providing her with a cell phone to use in case she had a problem, actually "negate[d] the possibility of a finding that [the defendant] exercised 'heedless indifference' and 'perversely disregard[ed] a known risk,' such that recklessness could be found." *Id.* at ¶ 29. Likewise, Ms. Bush's actions also establish she attempted to negate the risks of her daughter leaving the front yard and running into the road, including sending her four-year-old to play outside under the watchful eye of her brother and setting boundaries for her daughter, such as not allowing her to cross the street or go anywhere by herself. To be sure, things happen (the brother ran off to play somewhere else, the daughter felt the lure of the other side of the street) and children have a tendency to go off script—but we must be very cautious about letting that truism substitute for "recklessness," lest we render virtually every parent in the county guilty of child endangerment.

{¶13} Moreover, contrary to the state's assertion, the young man's comment in the video does not suggest Ms. Bush had notice of her child's propensity to wander off on her own. As a preliminary matter, the comment—"it's happened like twice"—is not only unreliable evidence since the young man never testified at trial, but the comment fails to identify exactly what had happened twice. *See State v. Smith*, 2019-Ohio-3257, ___ N.E.3d ___, ¶ 21 (1st Dist.) (finding body cam comments from an individual who did not testify at trial constituted inadmissible hearsay and violated the Confrontation Clause). And even if we infer the comment suggests the child wandered off before, this still does not confirm that Ms. Bush knew about these prior instances. Thus, this is not an instance like in *Miller*, where the defendant knew her child had a tendency to wander off since the police, just four days prior, had discovered the child unsupervised outside in the cold weather. *See Miller*, 3d Dist. Logan Nos. 8-07-07 and 8-07-08, 2007-Ohio-6711, at ¶ 19 (affirming the finding of recklessness because "[the defendant] knew [her daughter] was leaving the home

unsupervised," since the testifying officer "was at [the defendant's] home just four days prior * * * and informed [the defendant] that [her daughter] left the home."). The state provided no evidence here that Ms. Bush knew of any tendency of her daughter's to leave the front yard and run across the street or her son's inability to adequately watch his sister.

{¶14} Therefore, based upon the above, we cannot find the state provided sufficient evidence beyond a reasonable doubt that Ms. Bush recklessly created a substantial risk to the safety of her daughter. To paraphrase our decision in *State v. Martin*, while Ms. Bush may have acted imprudently and possibly negligently, we cannot say that, by sending her four-year-old daughter to play in the front yard with her brother, she acted with "heedless indifference." *See State v. Martin*, 134 Ohio App.3d 41, 43, 730 N.E.2d 386 (1st Dist.1999). At most, Ms. Bush lost track of her daughter for five minutes, all the while believing her daughter was just a few feet away in the front yard playing with her older brother. Surely, losing track of a four-year-old child who wandered from the front yard for five minutes under these circumstances falls short of criminal recklessness. *See State v. Allen*, 140 Ohio App.3d 322, 325, 747 N.E.2d 315 (1st Dist.2000) ("Surely, leaving the boy alone for two minutes was not criminal[.]"). As this court time and time again has reiterated, "[w]e, as a society, cannot punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." *Martin* at 43. Otherwise, we will put parents in straightjackets and require them to keep their children locked inside around the clock or in fenced yards upon penalty of criminal prosecution. On the record before us, we cannot hold the state provided sufficient evidence of recklessness here.

III.

{¶15} For the foregoing reasons, we sustain Ms. Bush's sole assignment of error insofar that the state failed to prove beyond a reasonable doubt Ms. Bush acted recklessly.

Our disposition above renders both Ms. Bush's sufficiency challenge to the substantial risk element and her manifest weight argument moot. We, therefore, reverse the trial court's judgment and discharge Ms. Bush from further prosecution.

Judgment reversed and appellant discharged.

**ZAYAS, P. J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.