[Cite as *State v. Morgan*, 2022-Ohio-2932.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210509 |
|  |  | TRIAL NO. C-21CRB-10348 |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  |  |
| DONALD E. MORGAN, | : | *O P I N I O N.* |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 24, 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Scott A. Rubenstein,* for Defendant-Appellant.

**Воск, Judge.**

**{¶1}** In this appeal, defendant-appellant Donald E. Morgan challenges the sufficiency of the evidence supporting his conviction for child endangerment in violation of R.C. 2919.22(A). For the following reasons, we affirm the conviction.

## I. <u>Facts and Procedure</u>

**{¶2}** When appellant-defendant Donald Morgan was on parole in 2021, parole officers Michael Wilson and Kristin Abbott visited Morgan at a home in Loveland, Ohio. As a condition of his parole, Morgan was prohibited from having contact with his wife. During the visit, Wilson allegedly spotted Morgan's wife in the house. Wilson confronted Morgan and attempted to arrest him for the parole violation as Morgan held his two-and-a-half-year-old son.

**{¶3}** At the bench trial on the child-endangerment charge, the state presented testimony from Loveland Police Officer Mike Boettger and parole officers Abbott and Wilson. According to Abbott, Wilson was approximately three feet from Morgan when Wilson instructed Morgan to "put his kid down and put his hands behind his back." Abbot testified that Morgan threw his son at Wilson, describing it as a "launch" and "a pretty hefty throw." Likewise, Wilson testified that Morgan "projected his son towards me, threw him towards me."

**{¶4}** But Wilson did not catch Morgan's son. Instead, Morgan's "son hit the corner of the kitchen cabinet and then fell to the [tiled] floor." According to Abbott, "the child began to scream." Morgan fled. Wilson and Abbott gave chase. The officers returned to the home somewhere between 20 minutes to an hour later. Abbott recalled that upon her return to the home, the child showed no sign of injury—"the children are twins so they were very difficult to identify [because] neither child was crying."

2

Similarly, Wilson testified that the child showed no sign of distress.

{¶5}    Following the close of the state's case, Morgan unsuccessfully moved for an acquittal under Crim.R. 29. The trial court denied Morgan's request and later found him guilty of child endangerment in violation of R.C. 2919.22(A). Morgan informed the court that "there is a JFS investigation or case open" which was set for a hearing. The trial court sentenced Morgan to 180 days in the Hamilton County Justice Center, with 85 days credited to Morgan and costs remitted.

{¶6}    Weeks later, Morgan moved to mitigate his sentence based on another sentence out of Warren County. The trial court granted Morgan's motion to mitigate his sentence for child endangerment, and "remit[ted] [the] balance of days" because "D sentenced to 6 mth ODC in Warren Co. case no. 20CR37136."

{¶7}    Morgan appeals and challenges the sufficiency of the state's evidence.

## II. Law and Analysis

### Morgan's Appeal is Not Moot

{¶8}    As a threshold matter, the state maintains that the trial court's remitting Morgan's sentence rendered his appeal moot. This court lacks jurisdiction to consider the merits of a moot appeal. *In re Chambers*, 2019-Ohio-3596, 142 N.E.3d 1243, ¶ 9 (1st Dist.), citing *City of Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 17-18. A case is moot when there is no longer a live controversy between the parties and the "parties 'lack a legally cognizable interest in the outcome.' " *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 9, quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Traditionally, a defendant's voluntary completion of a sentence moots an

appeal. *See Lewis* at ¶ 17-18. According to the state, Morgan voluntarily served his sentence because he failed to request a stay of execution. *See In re Chambers* at ¶ 18.

{¶9} But we do not need to determine whether Morgan voluntarily completed his sentence because he faces collateral consequences stemming from his conviction. Under the collateral-consequences exception to the mootness doctrine, an appeal of a misdemeanor conviction is not moot if the defendant can identify "a collateral disability or loss of civil rights" stemming from his conviction. *State v. Smith*, 2016-Ohio-3521, 68 N.E.3d 114, ¶ 4 (1st Dist.), quoting *State v. Wilson*, 41 Ohio St.2d 236, 237, 325 N.E.2d 236 (1975), syllabus. A collateral disability exists when a defendant " 'may be subject to further penalties or disabilities under state or federal law after a judgment has been satisfied.' " *Smith* at ¶ 5, quoting *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, 867 N.E.2d 408, ¶ 10-14. The disability " 'need not have an immediate impact or impairment but may be something that occurs in the future.' " *Smith* at ¶ 5, quoting *In re S.J.K.* at ¶ 25. This requires a " 'possibility [of] collateral legal consequences.' " *Smith* at ¶ 5, quoting *Wilson* at 237.

{¶10} Morgan argues that his conviction carries collateral consequences. Specifically, he maintains that his conviction threatens his parental rights. A misdemeanor conviction for child endangerment may carry collateral consequences because it could impair a parent's custodial rights to a child.

{¶11} A court considering whether to terminate an individual's parental rights and award permanent custody of a child to the state must determine whether terminating parental rights is in the best interest of the child. R.C. 2151.414(D). And the court must determine if the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). The

statute requires a court attempting to answer these questions to consider a conviction for child endangerment under R.C. 2919.22(A) as a factor. *See* R.C. 2151.414(E)(6).

**{¶12}** In response, the state contends that Morgan's collateral-consequence argument must fail because the record is allegedly "devoid of any mention of the current status of his parental rights." Indeed, a potential loss of parental rights as a collateral consequence of a conviction is "purely speculative" without any evidence in the record of an existing custody dispute. *See State v. Moore,* 2d Dist. Montgomery No. 20772, 2005-Ohio-4518, ¶ 15. In *Moore,* the defendant argued that a conviction for domestic violence in violation of R.C. 2919.25 created a collateral disability "if a court were to consider the conviction against him when allocating parental rights were there to be a custody dispute." *Id.* at ¶ 14. The court rejected that argument as "purely speculative given that there is no evidence in the record that a custody dispute over Moore's son has arisen." *Id.* at ¶ 15.

**{¶13}** But unlike *Moore*, we need not speculate about hypothetical consequences which might occur in Morgan's future. Instead, Morgan faces a credible threat to his parental rights because of his conviction. The record in this case contains evidence that Morgan's children are subject to a custody dispute. After Morgan was convicted, he informed the court "there is a JFS investigation or case open" with potential for "custody sanctions." Therefore, Morgan's appeal of his conviction for misdemeanor child endangerment is not moot.

## Morgan's conviction is supported by sufficient evidence

**{¶14}** Turning to the merits of the appeal, Morgan challenges the sufficiency of the evidence supporting his conviction for child endangerment in violation of R.C. 2919.22(A). In a sufficiency challenge, we view the evidence in a light most favorable

to the state and determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, 957 N.E.2d 44, ¶ 23 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. There must be "some competent, credible evidence" for each element of the offense. *State v. Caton*, 137 Ohio App.3d 742, 750, 739 N.E.2d 1176 (1st Dist.2000).

{¶15} Ohio's child-endangerment statute states, in relevant part, that no parent "shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). In addition, the state must prove that the defendant acted recklessly. *Hartley* at ¶ 30. Reckless conduct is acting with "heedless indifference to the consequences" and "perversely disregard[ing] a known risk that his conduct [was] likely to cause a certain result or [was] likely to be of a certain nature." R.C. 2901.22(C). Conduct is "likely to be of a certain nature" when "there is merely good reason for expectation or belief." *Hartley* at ¶ 30.

{¶16} A conviction for child endangerment under R.C. 2919.22(A) must be supported by evidence demonstrating that 1.) an individual with custody or control over a child, 2.) violated a duty of care, 3.) created a substantial risk to the child's health, and 4.) acted recklessly. *State v. Allen*, 140 Ohio App.3d 322, 323, 747 N.E.2d 315 (1st Dist.2000), citing *Caton* at 742. Child endangerment cases are typically fact-specific. *State v. Bush*, 2020-Ohio-772, 152 N.E.3d 892, ¶ 8 (1st Dist.).

{¶17} R.C. 2919.22(A) is " ' "aimed at preventing acts of omission or neglect" ' involving a child." *City of Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 27 (8th Dist.), quoting *State v. Bennett*, 7th Dist. Mahoning No. 12 MA 223, 2013-Ohio-5524, ¶ 19, quoting *State v. Newman*, 4th Dist. Ross No. 94CA2079, 1995 Ohio

App. LEXIS 3713 (Aug. 18, 1995). Yet, an affirmative act may fall under R.C. 2919.22(A) " ' "where a defendant has failed to protect the child from harm inflicted upon the child while in the defendant's care, even when the defendant is the person who inflicted the harm." ' " *State v. Cook,* 1st Dist. Hamilton Nos. C-210142, C-210143 and C-210144, 2021-Ohio-3841, ¶ 15, quoting *State v. Klofta*, 2d Dist. Montgomery No. 28690, 2020-Ohio-5032, ¶ 32, quoting *State v. Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055.

{¶18} A substantial risk is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). There must be "some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single imprudent act." *Cohen* at ¶ 27, quoting *State v. Hughes*, 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, ¶ 21, quoting *Middletown v. McWhorter*, 12th Dist. Butler No. CA2006-03-068, 2006-Ohio-7030, ¶ 11. In other words, the circumstances must show that the parent's conduct created a strong possibility that his child would be harmed. *State v. Boone*, 1st Dist. Hamilton No. C-950427, 1996 Ohio App. LEXIS 3387 *5 (Aug. 14, 1996). In the past, we have recognized that a single incident may sustain a conviction for child endangerment and "neither actual injury, nor a pattern of physical abuse is required." *Cook* at ¶ 15.

{¶19} Morgan contends that the risk of harm to his son was speculative and that the trial court stacked inference upon inference to transform that speculative risk into a substantial risk. We disagree. When viewing the testimony in a light most favorable to the state, the evidence in the record sufficiently established the elements of child endangerment under R.C. 2919.22(A). Abbott testified that Morgan stood

7

approximately three feet from Wilson when he threw, or launched, his son towards Wilson. It was a "pretty hefty throw." Morgan's son struck a nearby countertop before landing on a tiled floor. As "[t]he child began to scream," Morgan, rather than checking to see if his son was harmed, ran out of the house. Based on this evidence, a rational trier of fact could find that Morgan recklessly created a substantial risk of harm to his son and violated a duty of care and protection. Certainly, there was a "strong possibility" that his son would sustain an injury.

{¶20} Morgan relies on caselaw involving unsupervised children, arguing that the risk posed to Morgan's son was speculative because the evidence merely presented "potentially hazardous scenarios." But these cases are readily distinguishable from Morgan's conduct.

{¶21} For instance, we have reversed a mother's conviction for child endangerment when the evidence demonstrated that the mother merely lost track of her four-year-old daughter as her daughter played in the front yard with her ten-year-old brother, and the daughter ran across the street. *See Bush*, 2020-Ohio-772, 152 N.E.3d 892, at ¶ 2. While a mother losing "track of her daughter for five minutes" may have been imprudent, it "f[ell] short of criminal recklessness." *Id*. at ¶ 14. Indeed, neither a caregiver's divided attention, nor a less-than-ideal "level of supervisory attention," amount to acting with heedless indifference to consequences or perversely disregarding a known risk. *State v. McLeod*, 165 Ohio App.3d 434, 2006-Ohio-579, 846 N.E.2d 915, ¶ 14 (2d Dist.) (evidence was insufficient to prove that a caregiver acted recklessly when he left a five-year-old child unsupervised on a playground for approximately 30 minutes as the caregiver attended to other children); *see Allen*, 140

Ohio App.3d at 324, 747 N.E.2d 315 ("leaving a boy alone for two minutes was not criminal.").

**{¶22}** But unlike *Bush, McLeod,* and *Allen*, Morgan's actions were not instances of a parent's divided attention or imprudent act. Rather, Morgan actively risked his son's health and safety by throwing him at Wilson over a hard tile floor near hard countertops. And while the record in *Bush* indicated that the mother "took precautions to negate" any risk to her daughter's safety, we find nothing to suggest that Morgan took precautionary steps to protect his child. *See Bush* at ¶ 12.

**{¶23}** Despite Morgan's contention, our holding does not require "multiple contingencies to occur and several inferences to be made before the actual harm is brought to fruition." *See Hughes,* 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, at ¶ 23. In *Hughes,* there was no evidence that the father recklessly disregarded a substantial risk of harm when he left his five-year-old daughter in an air-conditioned car. *Id.* at ¶ 29. The *Hughes* court found the evidence of a substantial risk of harm insufficient because any risk of the child leaving the car, operating the car, or a potential abduction required contingencies—the child leaving her secured car seat, unlocking the car door, reaching the break and gearshift, or another person breaking into the car. *Id.* at ¶ 23-27; *see Martin*, 134 Ohio App.3d at 42, 730 N.E.2d 386 (reversing a mother's conviction for child endangerment for leaving her nine-year-old in a parked car because "conclud[ing] otherwise would require an inference upon an inference - that the car would strike another vehicle and that the child would also be injured - which is legally impermissible."). But here, such inferences are unnecessary. Morgan threw his child in the vicinity of a hard surface and fled as his son cried out after hitting a countertop. The risk of harm to Morgan's son was obvious.

9

### III. <u>Conclusion</u>

{¶24} Morgan's appeal is not moot due to the existence of collateral consequences stemming from his conviction. And the evidence in the record was sufficient to sustain Morgan's conviction for child endangerment under R.C. 2919.22(A). Therefore, we overrule his single assignment of error and affirm his conviction.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.