[Cite as *State v. Gurung*, 2024-Ohio-3202.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240073 |
| | | TRIAL NO. C-23CRB-16696 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| GANGA GURUNG, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:    Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: August 23, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Joshua A. Thompson*, Assistant Public Defender, and *Andrea Miceli*, Legal Intern, for Defendant-Appellant.

**KINSLEY, Judge.**

**{¶1}** Following a bench trial in the Hamilton County Municipal Court, defendant-appellant Ganga Gurung was convicted of one count of child endangerment in violation of R.C. 2919.22, a misdemeanor of the first degree. Gurung argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence, and that the trial court erred in sentencing him. On the record before us, we hold that the State failed to present sufficient evidence that Gurung acted recklessly. We accordingly reverse the judgment of the trial court and discharge Gurung from further prosecution.

### *Factual and Procedural Background*

**{¶2}** On September 24, 2023, Gurung's ten-year-old son N.G. wandered naked into his neighbor's padlocked backyard and attempted to enter the neighbor's swimming pool. Unable to remove N.G. herself, the neighbor alerted another neighbor to contact the police, who then brought charges against Gurung for child endangerment.

**{¶3}** A bench trial took place on November 7, 2023. At the trial, the State called four witnesses: (1) the neighbor; (2) Officer Katie Long; (3) Sergeant Martin Case; and (4) Officer Louis Madecke.

**{¶4}** The neighbor testified that she lived next door to the Gurung family. She explained that, on September 24, 2023, she was in her backyard doing yard work when N.G. appeared naked through her open garage door and started walking toward her pool. She testified that she pulled him away from the pool, put him back in either his yard or garage, and returned to her home. According to the neighbor, N.G. returned and walked towards her pool again, this time heading toward the diving

board. This behavior alarmed the neighbor because the pool was deeper at that end. As she explained, she again returned N.G. to his yard, but he later moved a chair against the chain linked fence that separated the two properties and attempted to climb over to once again gain access to her backyard. The neighbor then asked another resident of the neighborhood to call the police.

{¶5} According to the neighbor's testimony, she had spoken to Gurung about concerns with N.G. accessing her yard in the past. She had not, however, spoken to Gurung about the issue that day.

{¶6} On cross-examination, the neighbor testified that she and the Gurungs were not friendly, but that she knew Gurung lived there with his wife and three children. She admitted that she did not know if N.G. could swim, nor did she know what language N.G. spoke. The neighbor admitted that she did not attempt to notify Gurung while the child was outside. In describing her pool, the neighbor also conveyed that her yard is surrounded by a padlocked fence.

{¶7} Long testified that she worked for the Springfield Township Police Department. On the day of the incident, the department received a call that an unclothed child had been running around unsupervised for 45 minutes. She testified that she was the first officer to arrive at the scene. Long explained that when she arrived, N.G. was on the edge of the pool, and the neighbor was trying to pull the child away from the edge. The neighbor explained to Long that N.G. lived next door and that he was nonverbal. When Long attempted to assist the neighbor in removing N.G., he began pulling away and scratching and biting at them.

{¶8} Long further explained that other officers on the scene made entry into the Gurung home through the door that led to the home through the open garage.

3

Officers entered the home, according to Long, because no one responded to their calls inside.

{¶9} On cross-examination, Long testified that she did not know when the Gurung's garage door was opened, how long it had been opened, or who opened it. She also conceded that the family likely did not use the front door, because there was a child gate covering it.

{¶10} Madecke testified that he was the second officer to arrive on the scene. When he arrived, Long was with N.G. in the driveway of his home. Madecke then yelled into the house through the garage in an attempt to locate an adult. Madecke testified that when no one replied, he entered the home and called out about eight to ten times, for about three to five minutes. When he received no response, he began to go up to the second floor of the home when he heard a voice and Gurung appeared. Gurung told Madecke that he had been sleeping.

{¶11} Madecke explained that two other children—a four- or five-year-old and a 17- or 19-year-old—were also in the home. Madecke also explained that the mother had been at the laundromat and returned home when she was contacted.

{¶12} Case testified that he was the fourth officer to arrive at the scene. Case testified that he had to step over a baby gate that was on the front porch to get to the front door. He further testified that Nepalese was Gurung's first language.

{¶13} Gurung testified on his own behalf. He explained that around 6 p.m. on the day of the incident, he went upstairs with his two younger children to get ready to take a bath. He testified that before they went upstairs, he closed the garage door. He explained that he later laid down in his bed with his youngest child and that N.G. was in his own room. Gurung disputed being asleep at the time the police arrived. Rather,

4

he testified that in Nepali culture the word "sleeping" means lying down and that is what he was doing when N.G. wandered off.

{¶14} On cross-examination, Gurung agreed that N.G. previously went in and out of the home but had not been doing so lately. He also testified that N.G. was able to open the garage door. He further explained that the children's gate on his front porch was there to prevent his children from going on to the street.

{¶15} Ultimately, the trial court found Gurung guilty of one count of child endangering. In reaching its decision, the trial court explained that Gurung had a duty to attend to and supervise his child. The trial court questioned whether N.G.'s acts were foreseeable and whether Gurung acted with heedless indifference to the foreseeable circumstances of N.G.'s conduct. In resolving these questions, the trial court emphasized the fear of pool owners of an accidental drowning, thus implying that pools are inherently dangerous. The trial court also emphasized N.G.'s unique tendencies, noting that the child "gets out and does things." The trial court ultimately found that Gurung "was asleep; that his inattentiveness . . . created a substantial risk to this child. And for those reasons, . . . he's guilty of child endangering."

{¶16} The trial court sentenced Gurung to 180 days of incarceration, which it suspended. It also sentenced him to "$100 in costs" and one year of probation, and ordered him to cooperate with the Hamilton County Department of Job and Family Services.

{¶17} Gurung now appeals.

## Sufficient Evidence

**{¶18}** On appeal, Gurung raises two assignments of error. First, Gurung argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Second, Gurung argues that the trial court erred in sentencing him.

**{¶19}** To assess whether a conviction is supported by sufficient evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.). "'Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.'" (Citations omitted.) *State v. Austin*, 2021-Ohio-3608, ¶ 16 (1st Dist.).

**{¶20}** R.C. 2919.22(A) states that "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." To find a defendant guilty of child endangerment under this statute, the State must prove that the defendant: (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen; (2) violated a duty to that child; (3) created a substantial risk to the health or safety of the child; and (4) acted recklessly. *State v. Miller*, 2007-Ohio-6711, ¶ 12 (3d Dist.). Child endangerment cases are highly fact-specific. *Beachwood v. Hill*, 2010-Ohio-3313, ¶ 21 (8th Dist.).

{¶21} Gurung contends that the State failed to prove beyond a reasonable doubt that he violated his duty of care, created a substantial risk of harm to N.G., and possessed the required mental state of recklessness. We begin with Gurung's sufficiency argument as to recklessness, as it is dispositive of this appeal.

{¶22} Pursuant to R.C. 2901.22(C), a person acts recklessly when "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." In evaluating recklessness in a child endangerment case, courts generally look to a number of factors bearing upon the parent's mental state, including the period of time the parent or guardian left the child unsupervised, the age of the child, whether the parent or guardian had any notice of the substantial risk presented in the case, and any precautions the parent took to mitigate against or negate the risk. *State v. Bush*, 2020-Ohio-772, ¶ 8 (1st Dist.). These factors help establish whether a parent or guardian acted with the requisite heedless indifference to the child. *Id.* at ¶ 12.

{¶23} A critical factor with regard to Gurung's mental state in this case is N.G.'s age. The record reflects that N.G. was ten years old at the time of the incident. With regard to cases involving an alleged lack of supervision by a parent or guardian, courts have typically upheld child endangerment convictions involving much younger children, who are presumably less able to care for themselves. *See, e.g., State v. Spivey*, 2021-Ohio-2598, ¶ 12 (1st Dist.) (discussing distinctions between failure to supervise case involving children ages three and six and similar case involving child who was almost nine); *State v. Schaffer,* 127 Ohio App.3d 501, 503 (11th Dist. 1998) (affirming conviction for child endangerment where two-year-old child left home

without mother's knowledge and house was situated near two busy intersections). We are aware of no case involving a child of this age where there existed sufficient evidence of recklessness based on absent supervision. In fact, to the contrary, in *Bush* we overturned a child endangerment conviction in part because a parent had left her four-year-old daughter in the yard under the supervision of her ten-year-old son. *Bush*, 2020-Ohio-772, at ¶ 14 (1st Dist.).

{¶24} With regard to age, the State argues that we should adjust N.G.'s actual age downward based upon a perceived lack of maturity in his behaviors and his possible developmental delays. In support of this argument, the State points to testimony from a police officer recounting the neighbor's statement that N.G. is nonverbal and to N.G.'s childlike behaviors in wandering outside naked and returning to the pool. But the State cites no case law to support its position. Even if it did, nothing in the record tells us how we should ascertain N.G.'s developmental age. The State presented no expert testimony or medical evidence that would enable us to accurately pinpoint N.G.'s level of maturity. Thus, in the absence of evidence to the contrary, we consider N.G.'s age as a factor that cuts against recklessness in this case.

{¶25} So too does the time period of the incident undercut a finding of recklessness. While the time period that N.G. was outside varies from witness to witness, at most N.G. was left unattended for a period of 45 minutes. During this time, the neighbor returned N.G. to his property multiple times, although he continued to return to her backyard. Thus, the actual time of N.G.'s absence from home was actually shorter than 45 minutes.

{¶26} For guidance as to the significance of this period of time, we look to *State v. Hughes*, 2009-Ohio-4115, ¶ 33 (3d Dist.), where the Third District reversed a

8

father's child endangerment conviction for lack of sufficient evidence that leaving his child in a running vehicle outside of a Walmart store for 27 minutes "recklessly created a substantial risk to the health or safety" of the child. We are also guided by this court's decision in *State v. Martin*, 134 Ohio App.3d 41 (1st Dist. 1999). In that case, we similarly reversed a child endangerment conviction where a mother left her sleeping child in a vehicle for 20 to 30 minutes and the child accidentally hit the vehicle out of gear, causing it to roll.

{¶27} In this case, the period of time for which N.G. was unsupervised was only slightly longer that those at issue in *Hughes* and *Martin*. And the period is the same or shorter if it is considered to be only the time during which N.G. was actually in the neighbor's yard and therefore actually exposed to what the State defined as a substantial risk. We are constrained to see how leaving a ten-year-old child unsupervised for a period of 45 minutes rises to the level of heedless indifference, particularly given that Gurung was attending to his younger son at the time.

{¶28} With regard to a parent's notice of a substantial risk, this court has suggested, without explicitly holding, that a parent's notice of a child's tendency to wander off can weigh in favor of finding recklessness. *See Bush*, 2020-Ohio-772, at ¶ 13 (1st Dist.). In the *Bush* case, however, the child was much younger than N.G. *Id.* at ¶ 4. And in making this observation the court relied upon a case in which a parent had notice of a child's propensity to wander into a nearby busy intersection—an environment that young children are not be equipped to navigate. *Id.*, citing *Miller*, 2007-Ohio-6711, at ¶ 19 (3d Dist.). None of those circumstances are present here. N.G. is older than the children in question in the absent supervision cases where child endangerment convictions were upheld, and he did not wander into lanes of speedy

traffic unprepared to cross the street. While Gurung did have notice that N.G. had a propensity to wander off, a parent of an older child who might leave home and go into a neighbor's yard would understandably feel less concerned than the parent of a much younger child. Moreover, N.G.'s wandering appeared to span only to his neighbor's yard, and not further than that. To the extent the pool presented a risk, the pool was behind a padlocked fence, and no witness testified that N.G. was unable to swim. Therefore, due to N.G.'s age and the fact that he left home for another residential property, what notice Gurung had as to N.G.'s behavior did not rise to the level of heedless indifference on Gurung's part.

{¶29} Further demonstrating a lack of recklessness are the precautions taken by Gurung to protect N.G. Gurung maintained a baby gate across the front door to prevent his children from leaving the home. Gurung also offered uncontroverted testimony that he closed the garage door prior to bathing N.G. and the youngest child. The record also indicates that Gurung's 17-year-old son was at home as well. And Gurung was aware of the neighbor's attentiveness to N.G., given their prior conversations. Gurung therefore took more precautions than the parent in *Bush*, who sent her four-year-old child outside to play in the front yard with her ten-year-old brother and was held by this court not to have committed child endangerment. *See Bush*, 2020-Ohio-772, at ¶ 1, 14 (1st Dist.).

{¶30} Taking these factors together, we cannot hold that the State presented sufficient evidence that Gurung acted recklessly. While Gurung could have been more attentive to N.G., Gurung did not act with heedless indifference to N.G.'s wellbeing. In reaching this conclusion, we emphasize N.G.'s age, the relatively short duration of the incident, the neighbor's attentiveness to the incident, the presence of an older

teenager in the home at the time, the precautions taken by Gurung, and the fact that N.G. wandered into a neighbor's yard rather than a busy intersection. Although "we might think that certain parenting choices are imprudent, [w]e as a society, cannot punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." *State v. Jones*, 2023-Ohio-3862, ¶ 21 (1st Dist.). "Otherwise, we will put parents in straightjackets and require them to keep their children locked inside around the clock or in fenced yards upon penalty of criminal prosecution." *Bush*, 2020-Ohio-772, at ¶ 14 (1st Dist.).

**{¶31}** Therefore, on the record before us and considering the evidence in the light most favorable to the State, we find that there is insufficient evidence to prove the required element of recklessness.

### *Conclusion*

**{¶32}** For the foregoing reasons, we sustain Gurung's first assignment of error insofar as the State failed to prove beyond a reasonable doubt that Gurung acted recklessly. Our disposition of Gurung's sufficiency argument as to the recklessness element renders moot his challenges to the sufficiency of the evidence regarding the duty of care and substantial risk elements of child endangerment, as well as his argument that his conviction was against the manifest weight of the evidence. Gurung's second assignment of error regarding his sentence is also moot and we do not address it. *See* App.R. 12(A)(1)(c).

**{¶33}** The judgment of the trial court is accordingly reversed, and Gurung is discharged from further prosecution.

Judgment reversed and appellant discharged.

**BERGERON, P.J.,** and **WINKLER, J.,** concur**.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.