[Cite as *State v. Watts*, 2023-Ohio-1394.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220219 |
| | | TRIAL NO. B-2102944 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JAISHON WATTS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Reversed in Part and Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 28, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plainitff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   Following a bench trial, defendant-appellant Jaishon Watts was convicted of one count of aggravated robbery under R.C. 2911.01(A)(1), with two attached firearm specifications.  He has appealed that conviction, raising four assignments of error for review.  We find no merit in his first two assignments of error, which pertain to the trial court's guilty finding.  His other two assignments of error pertain to sentencing.  We find them to have merit, and the state concedes the errors.  Consequently, we sustain those two assignments of error.  We vacate the order requiring Watts to stay away from the victim.  We reverse the sentences imposed for the firearm specifications and remand the matter for resentencing.

### *Factual Background*

{¶2}   The record shows that about midnight on June 4, 2021, Gustavo Morales Ramirez and his wife stopped to get gas.  He was driving a red Kia Rio.  As he was waiting in line to pay, he saw two young men at the gas station, one of whom had his faced covered and was openly carrying a rifle.  He also noticed a black Chevrolet, which followed him as he left the gas station and drove to his sister-in-law's house to pick up his son.

{¶3}   Ramirez then drove to his home and parked the car in his driveway.  As he was getting his son out of the car, the two men from the gas station approached him.  After one of the men asked for his wallet, Ramirez was hit in the head with the gun.  He fell to the ground, and both men hit him several times.  One of the men then went to Ramirez's wife and took her phone.

{¶4}   The next day, Detective Joseph Coombs went to the gas station and obtained video from its surveillance cameras.  He saw a black Chevrolet Impala that

had arrived at about 11:40 the night of the robbery. It had a temporary license plate in the window and a missing front driver's side hubcap. Inside the car, he saw two males, one of whom was armed with a small rifle. The car left the gas station shortly after Ramirez left and went in the same direction that Ramirez's car had gone.

{¶5} To assist in the investigation, Detective Coombs took two still images of the black Chevrolet and its occupants and emailed them to other police officers to see if any of them could identify the occupants. Subsequently, he learned that Watts was the driver and that a Chevrolet Impala that matched the description of the car used in the robbery was registered to Watts. Detective Coombs conducted surveillance of the address listed on the registration, and he observed a black Chevrolet Impala with a temporary plate and a missing hubcap in the parking lot of an apartment building.

{¶6} Detective Coombs signed a warrant for Watts's arrest and spent several weeks attempting to locate him. Eventually, Watts was stopped by Colerain Township Police driving the black Impala, and he was arrested on the open warrant. Detective Coombs interviewed Watts. Watts admitted that he was driving the car. But he said that he was operating a bootleg cab and that he had given a ride to the two individuals seen in the video in exchange for $10 of gas. He denied knowing anything about the robbery.

{¶7} Although Ramirez identified two individuals from the security video as the men who had assaulted him, he could not identify Watts as one of those men. When Watts's picture was included in a photo lineup, he could not identify Watts.

{¶8} Watts was indicted on one count of robbery under R.C. 2911.02(A)(2) and one count of aggravated robbery under R.C. 2911.01(A)(1), each accompanied by two firearm specifications. After finding Watts guilty of both counts, and the accompanying firearm specifications, the trial court merged the robbery count with

the aggravated-robbery count. It also merged the two firearm specifications on the robbery count with the specifications on the aggravated-robbery count and sentenced him on the one-year and three-year specifications attached to the aggravated-robbery count. It sentenced Watts to a total of six years in prison. This appeal followed.

### *Weight and Sufficiency*

{¶9} In his first assignment of error, Watts contends that the evidence was insufficient to support his conviction. He argues that the state failed to prove that he knowingly aided and abetted the robbery. This assignment of error is not well taken.

{¶10} The relevant inquiry, when reviewing the sufficiency of the evidence, is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 48. In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses. *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 45.

{¶11} Watts was convicted of aggravated robbery under R.C. 2911.01(A)(1), which provides, "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶12} Watts was charged with being an aider and abettor under R.C. 2923.03(A)(2), the complicity statute. It states, "No person, acting with the kind of

4

culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To aid or abet is to assist or facilitate the commission of a crime, or to promote its accomplishment. *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001); *Ojile* at ¶ 52.

{¶13} To support a conviction for complicity by aiding and abetting, the evidence must show that "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." That intent "may be inferred from the circumstances surrounding the crime." *Johnson* at syllabus. The mere presence of the defendant at the scene of the crime is not, in and of itself, sufficient to prove that he or she was an aider and abettor. *Id.* at 243; *State v. Patton*, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 11.

{¶14} Because this case was tried to the court, we presume that the court considered only "relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Daly*, 1st Dist. Hamilton No. C-110602, 2012-Ohio-4151, ¶ 5, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 195. Further, courts are presumed to know and apply the correct law. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 137; *State v. Johnson*, 1st Dist. Hamilton Nos. C-081195 and C-081196, 2009-Ohio-6800, ¶ 17.

{¶15} Watts acknowledged that the car in the video belonged to him. He argues that the state only proved his presence as the driver of the car, and that it failed to prove he had any knowledge that the other two men planned to rob anyone. The state presented evidence supporting the inference that Watts was an aider and abettor. Two passengers were riding in his car, one of whom was openly carrying a rifle. The

video showed that Watts's car had arrived at the gas station approximately a half-hour before Ramirez's car arrived, and in that time frame, appeared to follow another Hispanic person. Ramirez described how the same car followed him to his sister-in-law's house and then to his house. After the robbery, the robbers fled from the scene in the same car. Though the evidence is circumstantial, circumstantial evidence and direct evidence have the same probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus; *State v. Cephas*, 1st Dist. Hamilton No. C-180105, 2019-Ohio-52, ¶ 37.

{¶16} Our review of the record shows that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all the elements of aggravated robbery and the accompanying firearm specifications. Therefore, the evidence was sufficient to support the conviction, and we overrule Watts's first assignment of error.

{¶17} In his second assignment of error, Watts contends that his conviction is against the manifest weight of the evidence. After reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Watts's conviction and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, at ¶ 59. Consequently, we overrule his second assignment of error.

### *Sentencing*

{¶18} In his third assignment of error, Watts contends that the trial court erred in imposing both a one-year sentence and a three-year sentence on the firearm specifications. He argues that when one-year and three-year firearm specifications are

6

attached to a single offense, the court may only impose one term of imprisonment on those specifications. We find merit to this assignment of error.

{¶19} Under R.C. 2923.03(F), an accomplice to a crime is subject to the same penalties as the principal offender. An individual convicted of aggravated robbery and of a firearm specification is subject to the sentencing enhancement regardless of whether the accomplice was the principal offender or an unarmed accomplice. *State v. Chapman*, 21 Ohio St.3d 41, 487 N.E.2d 566 (1986), syllabus; *State v. Stein*, 6th Dist. Lucas No. L-19-1171, 2021-Ohio-761, ¶ 38; *State v. Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, ¶ 42; *State v. Hudson*, 2d Dist. Clark No. 09-CA-01, 2010-Ohio-839, ¶ 9.

{¶20} R.C. 2941.141(B) provides that "[i]mposition of a one-year mandatory prison term upon an offender under Division (B)(1)(a)(iii) of section 2929.14 of the Revised Code is precluded if a court imposes * * * [a] three-year * * * mandatory prison term on the offender under Division * * * (B)(1)(a)(ii) * * * of that section relative to the same felony." Similarly, R.C. 2941.145(B) provides that "[i]mposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded if a court imposes a one-year * * * prison term on an offender under division * * * (B)(1)(a)(iii) * * * of that section relative to that same felony."

{¶21} Therefore, because both specifications were attached to the same underlying count, the trial court was statutorily precluded from imposing sentences for both specifications. *See State v. Freeman*, 8th Dist. Cuyahoga No. 106363, 2018-Ohio-2936, ¶ 7; *State v. Reese*, 1st Dist. Hamilton Nos. C-060576 and C-060577, 2007-Ohio-4319, ¶ 26. We sustain Watts's third assignment of error, reverse the sentences

on the firearm specifications and remand the cause to the trial court to sentence Watts on one of the firearm specifications.

{¶22}   In his fourth assignment of error, Watts contends that the trial court erred in including an order requiring him to stay away from the victim.  He argues that a prison term and a stay-away order are mutually exclusive.  This assignment of error is well taken.

{¶23}   Both the Ohio Supreme Court and this court have held that a no-contact order is a community-control sanction.  *See State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 17;  *State v. Patrick*, 1st Dist. Hamilton No. C-220049, 2022-Ohio-4171, ¶ 8.  A trial court is authorized to impose either a prison or jail term, or community control for a particular offense.  *Anderson* at ¶ 31; *State v. James*, 1st Dist. Hamilton No. C-210597, 2022-Ohio-3019, ¶ 25.  Here, because the trial court imposed a prison term, it was not authorized to impose a community-control sanction.  *See Anderson* at ¶ 32; *James* at ¶ 25.  The trial court therefore erred in ordering Watts to stay away from the victim.

{¶24}   Where a court imposes both types of sanctions, the proper remedy is to vacate the no-contact portion of the sentence.  *Anderson* at ¶ 32; *Patrick* at ¶ 9. Therefore, we sustain Watts's fourth assignment of error and vacate the no-contact order.

### *Summary*

{¶25}   In sum, we overrule Watts's first and second assignments of error, and we sustain Watts's third and fourth assignments of error.  We reverse that part of the trial court's judgment sentencing Watts on both firearm specifications and remand the

cause to the trial court for resentencing on one firearm specification. We vacate the no-contact order. The trial court's judgment is affirmed in all other respects.

Judgment affirmed in part, sentences reversed in part and vacated in part, and cause remanded.

**CROUSE, P.J.,** and **KINSLEY, J.,** concur.

Please note:
The court has recorded its own entry this date.

9