[Cite as *State v. Jones*, 2023-Ohio-3862.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220624 |
| | | TRIAL NOS. C-22CRB-10919A |
| Plaintiff-Appellee, | : | C-22CRB-10919B |
| vs. | : | |
| | | *O P I N I O N.* |
| NICOLE JONES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: October 25, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Krista Gieske*, Assistant Public Defender, and *Spencer Hattemer*, for Defendant-Appellant.

CROUSE, **Presiding Judge.**

{¶1} Defendant-appellant Nicole Jones was convicted after a bench trial of two counts of endangering children after she left her eight- and ten-year-old children at home alone, with a padlock securing the door from the outside. In a single assignment of error, Jones argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We agree that the evidence was insufficient to support her convictions, and therefore, we reverse the judgments of the trial court.

### *I. Factual and Procedural History*

{¶2} In June 2022, Jones was charged with two counts of endangering children, in violation of R.C. 2919.22, misdemeanors of the first degree. The case was tried to the bench. The arresting officer, Officer Josh Harrell of the Norwood Police Department, provided the only testimony.

{¶3} Harrell arrived at Jones's apartment in response to a call from a representative of 241-KIDS, the Hamilton County child abuse hotline. Harrell and his partner met the 241-KIDS representative outside Jones's second-floor apartment. The front door of Jones's apartment was secured on the outside by a latch with a padlock.

{¶4} Because the officers thought it was necessary to check on the well-being of children they believed were locked inside the apartment, Harrell's partner cut the padlock off the door with bolt cutters. Cutting the lock off took 10 to 15 seconds. The officers encountered further resistance when trying to open the door, which they eventually discovered was because a couch had been pushed against the door. With a few minutes' effort, the officers were able to push the door open enough to enter the apartment.

{¶5}   After entering Jones's apartment, the officers looked around for the children. There was no one in the kitchen, bathroom, or children's bedroom. The last door, which Harrell eventually determined was the main bedroom, was locked from the inside. The sounds emanating from the room suggested that the children were inside. The children would not open the door for Harrell until he slid one of his business cards under the door to prove to them that he was a police officer. After the children got Harrell's business card, they opened the door. Harrell found two children, whom he guessed to be seven to ten years old.

{¶6}   Harrell talked to the children and asked where their parents were. The children told him they did not know. Harrell determined that the children seemed to be in good health and good spirits. They told Harrell that they had pushed the couch in front of the door because they were scared. The children both had cell phones, and it appeared that they knew how to use them. Harrell testified that the children were not crying, nor did they appear to be scared while he was talking with them.

{¶7}   While looking around the apartment, Harrell and his partner noticed firearm ammunition and an ashtray sitting on a dresser in the main bedroom. The ashtray contained what appeared to Harrell to be marijuana residue and marijuana cigarettes. Harrell testified that he did not see a firearm in the apartment. On cross-examination, Harrell agreed that "there were no readily apparent risks of harm to the children" in the apartment.

{¶8}   While Harrell was talking to the children, Jones returned home. After confirming that Jones was the children's mother, Harrell placed her under arrest.

{¶9}   In announcing its verdict, the trial court discussed briefly the distinctions between the case at bar and our prior decisions in *State v. Martin*, 134

Ohio App.3d 41, 730 N.E.2d 386 (1st Dist.1999), and *State v. Allen*, 140 Ohio App.3d 322, 747 N.E.2d 315 (1st Dist.2000), in which we held that the evidence was insufficient to show child endangerment:

> So the differences in these cases are: One, the mother in *Martin* made a conscious decision[,] Oh, do I wake up this kid and lug him in with me, or do I just leave him sleeping, I'm just running in for 20 minutes. In this case, and that's – that's *Martin* – actually 30 minutes we think.
>
> *Allen* is, My kid[']s doing his homework, I'm going across the street, presumably, I'm in sight of my house. What could happen? I'm gone for 20 minutes to make dinner, and my kid's doing homework. In this case, number one, we don't know how long the children were left alone. And number two, we don't know what their mother's reasoning was. So the other two, I know, and the Court of Appeals knew when they were balancing known perverse substantial risks, you know, versus just bad judgment. Judgment is always, always, always a balancing decision. And we don't know why Ms. Jones left her * * * 8 year old, and ten year old alone padlocked in. Was it to go and get butter from the neighbor across the street when her house is always in sight? Was it to run across the street and return a gift because her kids were sleeping? I don't have that other piece, and I can't speculate on what it is. But to me, when you're talking about whether it's a known substantial risk perversely disregarding a significant substantial risk of harm, I need to know what you're balancing it against, and I don't know what that is. So I suppose you would say, well that burden falls to the state, they didn't prove to

the court why she felt the need to leave her two children alone. So I'm just working through it in my head.

**{¶10}** The court finally concluded that the cases were distinguishable and found Jones guilty on both counts. The court reasoned that padlocking the children in their home created a substantial risk of harm to the children due to a risk of a fire. The court further found that "the children's own actions show that they felt they were at risk" because they pushed the couch against the door out of fear of strangers.[1]

**{¶11}** The court sentenced Jones to consecutive, 180-day jail terms for each count, which were suspended, along with an 11-month term of community control. This appeal timely followed.

## II. Analysis

**{¶12}** In her sole assignment of error, Jones argues that her convictions were not supported by sufficient evidence and that her convictions were against the manifest weight of the evidence.

**{¶13}** When reviewing for sufficiency of the evidence, an appellate court asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16. Essentially, the court "asks whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *Id.*

---

[1] We note our concern that the trial court may have impermissibly shifted the burden of proof to the defendant by basing its decision, at least in part, on a lack of justification presented by the defendant. *See, e.g., In re K.B.*, 12th Dist. Butler No. CA2006-03-077, 2007-Ohio-1647, ¶ 11 ("[A] trial judge, sitting as a trier of fact, may not consider a criminal defendant's failure to testify as evidence of the defendant's guilt."). However, while Jones does mention this issue briefly in her appellate brief, she does not assign it as error. Because we sustain Jones's assignment of error on other grounds, we need not engage in a plain-error analysis of this issue.

{¶14} Jones was convicted of two counts of child endangerment under R.C. 2919.22(A), one count for each of her children. The statute provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). The necessary mens rea for the offense is recklessness. *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus; *State v. Bush*, 2020-Ohio-772, 152 N.E.3d 892, ¶ 7 (1st Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶15} It is undisputed that Jones is the children's mother, and that the two children are under 18 years of age. Jones argues that the state failed to produce evidence that she violated a duty of care to her children, created a substantial risk to the safety of her children, or acted recklessly.

{¶16} A "substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). In order to show this substantial risk, the state must provide "some evidence beyond mere speculation as to the risk of harm that could potentially occur due to a single imprudent act." *State v. Morgan*, 1st Dist. Hamilton No. C-210509, 2022-Ohio-2932, ¶ 18, quoting *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 27 (8th Dist.), quoting *State v. Hughes*, 3d Dist. Shelby No. 17-09-02, 2009-Ohio-4115, ¶ 21, quoting *Middletown v. McWhorter*, 12th Dist. Butler No. CA2006-03-068, 2006-Ohio-7030, ¶ 11. In finding that such a substantial risk to the child exists, "the trial court is not permitted to 'make an

inference upon an inference in order to transform a speculative risk into a substantial risk.'" *Hughes* at ¶ 21, quoting *McWhorter* at ¶ 11, citing *State v. Caton*, 137 Ohio App.3d 742, 751, 739 N.E.2d 1176 (1st Dist.2000), citing *Martin*, 134 Ohio App.3d at 44, 730 N.E.2d 386.

{¶17} As we have observed previously, "child endangerment cases are typically fact-specific." *Bush*, 2020-Ohio-772, 152 N.E.3d 892, at ¶ 8. Here, the facts are that Harrell arrived at Jones's second-floor apartment to find the door padlocked on the outside. With 10 to 15 seconds of effort, another officer broke the padlock with bolt cutters. With some further effort, Harrell was able to push back the couch the children had moved in front of the door. Harrell testified that, after entering the apartment, he found ammunition and marijuana cigarettes on top of a dresser in the main bedroom, but that he saw no readily apparent risks of harm to the children. Harrell testified that, although the children had claimed they moved the couch in front of the door because they were scared, the children appeared to be in good spirits and in good physical condition. Harrell agreed that he had no reason to believe that the children had any health issues as a result of being left alone. The children had cell phones, which they knew how to use. While Harrell was talking to the children, Jones returned home.

{¶18} Determination of a substantial risk necessarily depends on the specific circumstances in each case. In *Hughes*, the Third District held that the risk to the child was merely speculative where a father left his five-year-old daughter alone in his locked truck, while he went into a store for approximately 27 minutes. *Hughes* at ¶ 3, 32. The truck was running, with the air conditioner turned on, and the child was left with a DVD player and a cell phone, which she knew how to use. *Id.* at ¶ 5, 7. Under

7

these circumstances, the court held that any of the potential risks identified by the state were speculative: that the child might exit from the car and be injured by another car in the parking lot; that the child could be kidnapped if she opened the door for a stranger; or that the child could have put the car into drive and struck another vehicle or object. *Id*. at ¶ 23. Each of those potential risks would require a series of events to unfold, each of which was itself a purely speculative risk. *Id*. at ¶ 24-27.

{¶19} Our decision in *Martin* likewise illustrates a speculative risk that was insufficient to show that the defendant had created a substantial risk of harm. *Martin*, 134 Ohio App.3d at 44, 730 N.E.2d 386. In that case, Martin had left her nearly-nine-year-old son sleeping in the back seat of her locked car while she went into a department store to make a return. *Id*. at 42. While Martin was inside the store, the child woke up and accidentally kicked the gearshift, causing the car to roll out of its parking space. *Id*. Two men who saw the event pushed the car back into place. *Id*. The police were called, and the responding officer testified that it was 20 to 30 minutes from his arrival until Martin returned to the car, after being alerted through the store's public address system at the officer's request. *Id*. Despite the time the child was left alone in the locked car, and the fact that the car was knocked out of gear and actually rolled a short way in the parking lot, the court found that any risk of harm to the child was too speculative to support a conviction for child endangerment. *Id*. at 43-44. This court held, "To conclude otherwise would require an inference upon an inference— that the car would strike another vehicle and that the child would also be injured— which is legally impermissible." *Id*. at 44, citing *State v. Graves*, 62 Ohio Misc.2d 358, 360-361, 598 N.E.2d 914 (M.C.1992).

{¶20} Even if the child is actually injured as the result of some hazard, it is the

8

*substantial risk* of injury that controls, not the outcome. In a recent decision, the Eleventh District found that the *potentially* dangerous condition that resulted in the unfortunate death of a child was not one that inherently posed a *substantial* risk to the child. *State v. Olah*, 11th Dist. Ashtabula No. 2022-A-0031, 2023-Ohio-2113, ¶ 37. In that case, a three-and-a-half-year-old child tripped at the top of a set of stairs, where a safety gate had been opened. *Id.* at ¶ 9. The child was badly injured by the fall down the stairs, and he eventually succumbed to his injuries. *Id.* It is unclear whether the child tripped on a rug or other clutter at the top of the stairs or merely fell the way any toddler might. *Id.* at ¶ 7-10. The court determined that while "the apartment generally was cluttered and posed some risks to occupants," the evidence was that there was "at least 32 inches of open passageway" where a toddler and two adults could safely pass single file. *Id.* at ¶ 37. Likewise, there was no evidence that the rug at the top of the stairs had ever previously presented any danger to the child or other occupants of the home. *Id.* Under these circumstances, despite the resulting injury, the court found that the state failed to show a "substantial risk" to the child's welfare. *Id.*

{¶21} These cases illustrate how close a child can come to harm without the risk being judged a substantial one. And while we might think that certain parenting choices are imprudent, "[w]e as a society, cannot punish parents for every error in judgment, even if a child is injured, under a theory of strict liability." *Bush*, 2020-Ohio-772, 152 N.E.3d 892, at ¶ 14, quoting *Martin* at 43.

{¶22} Under the circumstances in Jones's case, we believe that any risk to the children from being locked inside the apartment was merely speculative. The trial court speculated that the locked door might prevent the children from escaping a fire or that a burglar might use the same sort of bolt cutters as Harrell to access the

apartment. These harms both require that the court engage in speculation about worst case scenarios and forbidden inference stacking.

{¶23} Accordingly, we hold that viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found beyond a reasonable doubt that Jones recklessly created a substantial risk to the health or safety of her children, and therefore, her convictions were not based on sufficient evidence. As a result, Jones's manifest-weight issue is moot, and we do not reach it.

### III. Conclusion

{¶24} Jones's sole assignment of error is sustained. We reverse Jones's convictions as based on insufficient evidence, and she is discharged from further prosecution.

Judgments reversed and appellant discharged.

**BERGERON, J.**, concurs.
**WINKLER, J.**, dissents.

**WINKLER, J.**, dissenting.

{¶25} I respectfully dissent from the majority's opinion holding that the evidence was insufficient to support Jones's convictions. The evidence was sufficient to show that Jones recklessly created a substantial risk to the health and safety of her children.

{¶26} R.C. 2919.22(A) provides, "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection or support." A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). This

10

court has recognized that "a single incident may sustain a conviction for child endangerment and 'neither actual injury, nor a pattern of physical abuse is required.' " *State v. Morgan*, 1st Dist. Hamilton No. C-210509, 2022-Ohio-2932, ¶ 18, quoting *State v. Cook*, 1st Dist. Hamilton Nos. C-210142, C-210143 and C-210144, ¶ 15.

**{¶27}** Though the statute does not specify a culpable mental state, the Ohio Supreme Court has held that recklessness is an essential element of the offense. *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus; *State v. Bush*, 2020-Ohio-772, 152 N.E.3d 892, ¶ 7 (1st Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to certain circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that certain circumstances are likely to exist." *Id.*

**{¶28}** Jones argues and the majority holds that she did not create a substantial risk to the children's safety. To prove substantial risk, the state must present evidence beyond mere speculation as to the risk of harm that could potentially occur. *Morgan* at ¶ 18. While the state need not prove the child suffered actual harm, it must demonstrate the existence of circumstances that created the substantial risk of harm. *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 27 (8th Dist.). As we have previously held, child-endangerment cases are typically fact-specific. *State v. Richards*, 1st Dist. Hamilton No. C-210656, 2022-Ohio-4698, ¶ 15.

**{¶29}** I don't believe that the risk in this case is speculative. It is not speculative to say that the children, ages eight and ten, were trapped in the apartment. Because the apartment was on the second floor, the only escape was the front door,

which was padlocked from the outside. Jones created a substantial risk that they would not be able to get out of the apartment in case of an emergency. They had a cell phone, and Officer Harrell stated that it was "fair to say" that they knew how to use it. He did not specify how he came to that conclusion. There was no evidence showing that they knew how to call 911 or another number in an emergency.

{¶30} Even if they knew how to call 911, it would take time for the help to arrive. The court did not have to speculate whether the lock made it more difficult to get in the apartment. Officer Harrell testified that they were slowed down by the padlock. Even though it took only ten to 15 seconds to cut the padlock with a bolt cutter, extra seconds can be precious time in case of an emergency and could make a difference in the safety of the apartment's occupants. The officers also took extra time to determine that the couch was blocking the door and to push it out of the way so that they could enter the apartment.

{¶31} Further, the statute targets conduct that poses a serious risk to the physical and *mental health or safety* of the victim. (Emphasis added.) *Eastlake v. Corrao*, 11th Dist. Lake No. 2002-L-094, 2003-Ohio-2373, ¶ 19. The children pushed the couch in front of the door because they feared for their safety. They also would not respond to the police officers' inquiry until Officer Harrell identified himself as a police officer by sliding his card under the door. The children's actions showed that they felt that there was a risk of harm to themselves.

{¶32} The evidence was also sufficient to show that Jones acted recklessly. In determining whether a defendant acted recklessly, courts generally consider the child's age, the amount of time the child was left unsupervised, whether the parent had notice of the risk, and any precautions the parent took to mitigate the risk. *State v.*

12

*Spivey*, 1st Dist. Hamilton Nos. C-200125, C-200126, C-200127, C-200128 and C-200129, 2021-Ohio-2598, ¶ 13; *Bush*, 2020-Ohio-772, 152 N.E.3d 892, at ¶ 8.

**{¶33}** The children in this case were eight and ten. Leaving children of those ages alone, in and of itself, would not be sufficient to constitute the offense of endangering children. *See State v. Marzetti*, 10th Dist. Franklin Nos. 03AP-692 and 03AP-693, 2004-Ohio-3376, ¶ 14 (children ages 11, 9, and 6). Certainly, the state's case would have been stronger if it had presented evidence of how long Jones was gone and where she went. Nevertheless, Jones did more than simply leave her children alone to fend for themselves. She padlocked the door from the outside, leaving them no means of escape. I agree with the trial court when it stated, "It's certainly a known risk that anything can go wrong when you padlock anybody. * * * There's a whole different risk when you padlock someone in."

**{¶34}** I would hold that the state presented sufficient evidence, when viewed in a light most favorable to the prosecution, from which a rational trier of fact could have found that the elements of endangering children were proved beyond a reasonable doubt. Therefore, the evidence was sufficient to support Jones's convictions. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Watts*, 1st Dist. Hamilton No. C-220219, 2023-Ohio-1394, ¶ 10.

**{¶35}** I would also hold that Jones's convictions were not against the manifest weight of the evidence. After reviewing the record, I cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Jones's convictions and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Richards*, 1st Dist. Hamilton No. C-210656,

2022-Ohio-4698, at ¶ 13. Therefore, I would overrule Jones's assignment of error and affirm the trial court's judgments.

Please note:

The court has recorded its entry on the date of the release of this opinion.