[Cite as *In re E.K.*, 2024-Ohio-5291.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.K. | : | APPEAL NO. C-240229 |
| | | TRIAL NO. 20/3585 X |
| | : | |
| | : | *O P I N I O N* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 6, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Appellant State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Apellee E.K.

CROUSE, Judge.

{¶1} This appeal concerns the subject-matter jurisdiction of the Hamilton County Juvenile Court. The court dismissed a complaint for a parole violation that was filed against appellee E.K. after it determined that E.K., who was over 18 years old, was no longer subject to the juvenile court's jurisdiction. Appellant the State of Ohio appeals, arguing that the juvenile court's jurisdictional determination and resulting dismissal of the complaint were in error. Because E.K. was subject to the jurisdiction of the juvenile court with respect to the parole violation until he attained the age of 21, we hold that the court erred in dismissing the complaint. We accordingly reverse the juvenile court's judgment and remand this cause for further proceedings.

## I. Factual and Procedural History

{¶2} In November of 2020, a complaint for felonious assault, along with an accompanying weapon specification, was filed against E.K. in the Hamilton County Juvenile Court. E.K. was 15 years old at the time. E.K. admitted to the allegations in the complaint and was adjudged delinquent. He was committed to the Ohio Department of Youth Services ("DYS") for a minimum of 12 months and a maximum not to exceed E.K.'s attainment of 21 years of age. He received an additional 12-month commitment on the weapon specification, to be served consecutively to the commitment imposed for felonious assault.

{¶3} E.K. was granted early release from DYS on October 26, 2023, and placed on electronic monitoring as a condition of his parole. The juvenile court's entry granting early release prohibited E.K. from driving a car and stated that he was to live with his aunt, enroll in school, and have no contact with the victim of the offense. A juvenile court magistrate issued a decision accepting and approving the rules of parole, and that decision was adopted by the court.

**{¶4}** On December 19, 2023, a complaint for a parole violation was filed against E.K., alleging that he failed to follow his treatment plan and failed to maintain contact with his parole officer. At the request of defense counsel and E.K.'s parole officer, the magistrate delayed any further action on the complaint so that the parties could evaluate E.K.'s ongoing performance on parole.

**{¶5}** On March 6, 2024, an amended complaint for a parole violation was filed. The complaint contained allegations from E.K.'s parole officer, Derrica Chatman, that E.K. had been arrested and charged with carrying a concealed weapon, having a weapon while under disability, and receiving stolen property, and that he had consequently violated the conditions of his parole requiring him to obey all laws and to refrain from purchasing or possessing any weapon.

**{¶6}** A hearing was held regarding the parole violation on April 2, 2024. Chatman told the juvenile court that E.K. had pled to charges in the court of common pleas and was currently being held at the River City Correctional Center ("River City"). Chatman stated that E.K. would be on adult parole supervision upon his release from River City and asked that E.K. be discharged from parole through DYS. The State indicated that it would not stand in the way if the parole officer was withdrawing the violation, but it expressed concern that the victim of E.K.'s underlying offense had not been informed of the hearing in compliance with Marsy's Law. The court told the State to "let us know where you stand at the next hearing or before, that's fine."

**{¶7}** A subsequent hearing was held on April 10, 2024. The juvenile court initiated that hearing by stating, "[E.K.] has received an adult conviction for a firearm. The Court of Common Pleas, General Division placed him in River City. And his parole violation, here with us, will be dismissed. He'll be discharged from parole by the appropriate methods by DYS."

**{¶8}** The State objected, arguing that because E.K. was adjudicated delinquent for the underlying offense prior to turning 18, the juvenile court had continuing jurisdiction until he reached the age of 21, and therefore, could adjudicate the parole-violation complaint. The State asked for a plea of "admit" on the parole violation. Upon further questioning by the court regarding its position, the State responded:

> I think it makes a complete record. He's on parole. This was a parole violation, because he has picked up these new charges. The State understands he's in River City, but having a complete record for these purposes, for whatever happens in the future, it comes back and things of that nature, I think it does just that. It makes the record clear. And I believe the Court can do it under the statute.

**{¶9}** The court was not persuaded. It held that "[b]ecause he is over eighteen, because he has been convicted in adult court, and because he is now under the supervision of the Court of Common Pleas, this case is dismissed." In a corresponding entry dismissing the complaint, the court stated, "E.K. is over 18, has an adult conviction, and is currently held in River City on that adult matter. The Court declines to exercise concurrent jurisdiction as E.K. is an adult and no longer subject to Juvenile Court jurisdiction." The State now appeals.

## II.   *Dismissal of the Complaint*

**{¶10}** In its sole assignment of error, the State argues that the juvenile court erred in determining that it lacked subject-matter jurisdiction over E.K. because he is now an adult. E.K. concedes that the juvenile court has jurisdiction over him on the original delinquency charge, including the complaint for a parole violation, until he turns 21. Despite that concession, he argues that the juvenile court's dismissal of the

4

complaint should be upheld because the court nevertheless had the authority to dismiss the complaint under Juv.R. 9(A). He further argues, in the alternative, that this court should either affirm the juvenile court's judgment or dismiss the State's appeal because no meaningful relief can be granted and the appeal is moot.

{¶11} While a trial court's decision on a motion to dismiss an indictment is typically reviewed for an abuse of discretion, where, as here, a question of law has been raised as to whether the trial court had subject-matter jurisdiction, our review is de novo. *State v. Hudson*, 2022-Ohio-1435, ¶ 19.

{¶12} We first address the State's argument that the juvenile court erred in dismissing the complaint based on its determination that E.K. was an adult. We then discuss the alternative bases provided by E.K. for affirming the juvenile court's judgment.

### A. Subject-Matter Jurisdiction

{¶13} R.C. 2151.23 addresses the jurisdiction of the juvenile court. In relevant part, it provides that "[t]he juvenile court has exclusive original jurisdiction . . . [c]oncerning *any child* who on or about the date specified in the complaint" is alleged to be a delinquent child. (Emphasis added.) R.C. 2151.23(A)(1).

{¶14} The hearing on the parole violation was a delinquency proceeding. *In re Andrew*, 2008-Ohio-4791, ¶ 8 ("A parole-violation hearing of a person adjudicated a delinquent child is a delinquency proceeding."). The juvenile court's jurisdiction accordingly hinged on whether E.K. was considered a child even though he was over 18 years of age.

{¶15} The term "child" is defined in R.C. 2152.02(C)(1) as "a person who is under eighteen years of age, except as otherwise provided in divisions (C)(2) to (8) of this section." The exception set forth in R.C. 2152.02(C)(6) applies in this case. It

provides that:

> The juvenile court has jurisdiction over a person who is adjudicated a delinquent child or juvenile traffic offender prior to attaining eighteen years of age until the person attains twenty-one years of age, and, for purposes of that jurisdiction related to that adjudication, except as otherwise provided in this division, a person who is so adjudicated a delinquent child or juvenile traffic offender shall be deemed a "child" until the person attains twenty-one years of age.

R.C. 2152.02(C)(6). Interpreting this provision, the Ohio Supreme Court has held that "when a juvenile court is exercising jurisdiction over a person adjudicated a delinquent child pursuant to the matter for which the person was adjudicated delinquent," the person will be treated as a child until she or he attains 21 years of age. *In re Andrew* at ¶ 6.

{¶16} Here, E.K. was adjudicated delinquent for felonious assault at the age of 16 and committed to DYS. He was granted early release at the age of 18 and placed on parole. After his release, and while he was still 18, a complaint was filed charging him with a parole violation. In conducting a parole-violation hearing, the court was exercising its jurisdiction over E.K. pursuant to the matter for which E.K. was adjudicated delinquent. Pursuant to R.C. 2152.02(C)(6), the juvenile court retained jurisdiction over E.K. for such a purpose until he attained 21 years of age. As E.K. was not yet 21, he was considered a child and was subject to the jurisdiction of the juvenile court. *In re Andrew* at ¶ 6; R.C. 2152.02(C)(6). The juvenile court erred in determining otherwise.

{¶17} The Tenth District considered whether a juvenile court had subject-matter jurisdiction in similar circumstances in *In re Kelly*, 1999 Ohio App. LEXIS 808

(10th Dist. Mar. 4, 1999). The juvenile appellant in *Kelly* was adjudicated delinquent for robbery and placed on probation. *Id.* at *1. He was charged with a probation violation just before turning 18, and DYS filed a motion for the juvenile court to continue exercising jurisdiction. *Id.* at *1-2. Several weeks later, shortly after he turned 18, appellant was indicted on a weapon charge in the court of common pleas and his counsel filed a motion to terminate the juvenile court's jurisdiction. *Id.* at *2-3. The juvenile court granted DYS's motion to exercise continuing jurisdiction. *Id.* at *3. Appellant appealed, arguing that the juvenile court erred in failing to terminate its jurisdiction once it received notice that the court of common pleas was exercising its jurisdiction and that an exercise of concurrent jurisdiction was contrary to law.

**{¶18}** In rejecting appellant's argument, the Tenth District stated:

> In addressing appellant's contention that the juvenile court and the general division of the court of common pleas were improperly exercising "concurrent jurisdiction" over him, the trial court held that, "the juvenile court has exclusive original jurisdiction over the parole violation and no jurisdiction over the carrying a concealed weapon charge," whereas "the general division of the court of common pleas has original jurisdiction over the carrying a concealed weapon charge but no jurisdiction over the parole violation." Thus, the court concluded that appellant "is subject to the jurisdiction of both courts, exercised separately on two unrelated charges." We agree with the trial court's analysis.

*Id.* at *10-11. The Tenth District further stated that "the jurisdiction exercised by the general division of the common pleas court over the charge of carrying a concealed weapon had no affect [sic] on the juvenile court's exclusive jurisdiction to consider the

7

parole violation." *Id*. at *12.

**{¶19}** The same reasoning holds true in the case before us. While the court of common pleas retained jurisdiction over the matters that E.K. pled to in that court, the juvenile court retained exclusive jurisdiction over E.K.'s parole violation. Simply stated, one court's jurisdiction did not negate the other's.

**{¶20}** We accordingly hold, as E.K. concedes, that the juvenile court erred in dismissing the complaint for a parole violation based on its determination that E.K. was no longer subject to the juvenile court's jurisdiction.

### B.  Juv.R. 9(A)

**{¶21}** E.K. contends that the juvenile court's dismissal of the complaint for a parole violation should nonetheless be affirmed because the court had the authority to dismiss the complaint pursuant to Juv.R. 9(A). He argues that, in dismissing the complaint, the juvenile court achieved the right result for the wrong reason.

**{¶22}** Juv.R. 9(A), captioned "[c]ourt action to be avoided," provides that "[i]n all appropriate cases formal court action should be avoided and other community resources utilized to ameliorate situations brought to the attention of the court." This rule authorizes the juvenile court to dismiss cases that it believes are best handled in other manners or by utilizing other resources. But the record before us does not establish that the court relied on Juv.R. 9(A) in this case or support upholding the court's dismissal on the basis of that rule.

**{¶23}** The Ohio Supreme Court first discussed Juv.R. 9(A) in *In re M.D.*, 38 Ohio St.3d 149 (1988). In *M.D.*, the Court held that to charge a child under 13 with sex crimes for conduct that was characterized as "playing doctor" was contrary to R.C. Ch. 2151 and Juv.R. 9(A). *Id.* at 150. The Court elaborated on the purpose of Juv.R. 9(A), stating:

The best interests of the child and the welfare and protection of the community are paramount considerations in every juvenile proceeding in this state. This is further emphasized in the Rules of Juvenile Procedure. These goals are effectuated at every step in the juvenile court system, but are most effectively met at the initial intake of the juvenile by the juvenile court. The overriding rule upon intake of a child is that formal court action should be a last resort to resolving juvenile problems.

*Id.* at 153.

**{¶24}** More recently, the Court discussed Juv.R. 9(A) in *In re D.S.*, 2017-Ohio-8289. In that case, a complaint was filed charging a child under the age of 13 with three counts of gross sexual imposition. *Id.* at ¶ 2. The alleged victim of these offenses was also under the age of 13. *Id.* at ¶ 1. The juvenile court dismissed the charges against the child pursuant to Juv.R. 9 based on its determination that the treatment needs of both children involved could be met by alternative methods and that it was not in the best interest of either child to continue with the prosecution. *Id.* at ¶ 4.

**{¶25}** While the Tenth District Court of Appeals held that the record was not sufficiently developed to support a dismissal under Juv.R. 9(A), the Ohio Supreme Court disagreed and held that it was not an abuse of discretion to dismiss the action pursuant to that rule. *Id.* at ¶ 5 and 11. The Court recognized that Juv.R. 9(A) should be liberally interpreted and construed "'to provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court, and to protect the welfare of the community'" and also "'to protect the public interest by treating children as persons in need of supervision, care and rehabilitation.'" *Id.* at ¶ 8, quoting Juv.R. 1(B)(3) and (4). While recognizing that utilization of a formal court

proceeding would have provided a more detailed record to assist in determining an appropriate outcome, the Court stated:

> [T]hat is precisely the kind of proceeding that Juv.R. 9(A) empowers a juvenile court to avoid—a review of the details of a sexual interaction between children under the age of 13. A juvenile court's primary concern is not always to determine culpability for acts that would be crimes if committed by an adult. As we have recognized in the past, holding a formal proceeding to determine whether a child was motivated by innocent curiosity or by culpable sexual gratification may be as bad or worse for the children involved—and for society—as was the act itself.

*Id.* at ¶ 11.

**{¶26}** The record below plainly demonstrates that the juvenile court dismissed the complaint based on its mistaken belief that it no longer had jurisdiction over E.K. because he was 18 years old. There is no indication in the record that the dismissal was based on a need to protect E.K. or the community or because the court believed that continuing with a prosecution of the parole violation was not in E.K.'s best interest. The court did not indicate that it believed E.K.'s treatment needs could best be met by alternative means to a formal court proceeding. The court quite simply stated that it lacked jurisdiction over the complaint.

**{¶27}** A juvenile court generally has the authority to dismiss a complaint pursuant to Juv.R. 9(A). But where the record is clear that a court gave no consideration to Juv.R. 9(A), the rule cannot serve as the basis for upholding a juvenile court's dismissal of a complaint on other grounds. We accordingly reject E.K.'s Juv.R. 9(A) argument.

### *C. Mootness*

**{¶28}** E.K. further argues that this court should either affirm the juvenile court's judgment or dismiss the State's appeal because the case is "technically moot." E.K. contends that because he is already serving an adult sentence, the juvenile court can grant no meaningful relief even if it were to find that he violated parole.

**{¶29}** An appellate court will only rule on actual controversies, *In re A.F.*, 2020-Ohio-5420, ¶ 11 (1st Dist.), and does not have jurisdiction to rule on the merits of a moot appeal. *State v. Morgan*, 2022-Ohio-2932, ¶ 8 (1st Dist.). A case will be considered moot where further action by a court is precluded because the dispute has been resolved. *State v. Potter*, 2024-Ohio-4652, ¶ 6 (1st Dist.). In other words, a case is moot when there no longer exists a live controversy. *Miami Twp. Bd. of Trustees v. Weinle*, 2021-Ohio-2284, ¶ 30 (1st Dist.).

**{¶30}** Any action related to E.K.'s parole violation is not moot. The controversy has not been resolved, and, once the juvenile court's jurisdictional determination is reversed and the cause is remanded, a live controversy will still exist. Contrary to E.K.'s argument, the situation in the case at bar is not analogous to a situation in which a defendant raises a challenge on appeal to a sentence that has already been served. *See State v. Carr*, 2015-Ohio-2529, ¶ 9 (1st Dist.), citing *State v. Portis*, 2011-Ohio-2429, ¶ 18 (2d Dist.) (holding that where a defendant has been released from prison on a sentence that the defendant has challenged on appeal, the challenge to the sentence is moot because the defendant cannot be given back the time served and the court cannot provide meaningful relief).

**{¶31}** Rather, after reversal by this court, E.K.'s parole violation will remain pending and further action by the juvenile court will not be precluded. And contrary to E.K.'s argument, the court can still afford the State with meaningful relief. The State

made clear at the hearing on the parole violation that it wanted E.K. to admit to the violation for purposes of having a complete record should there be additional proceedings going forward. Even if the juvenile court ultimately elects to discharge E.K. from parole, it could still adjudicate him delinquent for the violation.

**{¶32}** We accordingly decline E.K.'s invitation to find that the case is moot.

### *III.  Conclusion*

**{¶33}** The juvenile court erred in determining that it lacked subject-matter jurisdiction over E.K. because he had turned 18. The State's assignment of error is sustained. The court's judgment dismissing the complaint for a parole violation is reversed, and this cause is remanded for further proceedings.

Judgment reversed and cause remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.